Giménez Muñoz, Juez Ponente
TEXTO COMPLETO DE LA RESOLUCION
I
El patrono recurrente, Humberto Vidal, Inc. (Humberto Vidal) presentó recurso de revisión contra una resolución de la Comisión Industrial de Puerto Rico, emitida el 26 de diciembre de 1996 y ratificada en reconsideración el 10 de marzo de 1997, mediante la cual se le designaba como patrono no asegurado, de conformidad con la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, et seq. El recurso de autos requiere que determinemos si el patrono presentó puntualmente su declaración de nómina y sus pagos al Fondo del Seguro del Estado (F.S.E.).
Por los fundamentos más adelante expuestos, procede denegar la expedición del auto solicitado.
El 20 de julio de 1990, el patrono Humberto Vidal envió por correo certificado al F.S.E. el formulario de declaración de nómina para el año 1989-90. Dicha correspondencia fue recibida por el destinatario el 24 de julio de 1990.
Seis empleados del patrono Humberto Vidal sufrieron accidentes del trabajo entre el 1 de julio de 1990 y el 24 de julio de 1990. El 30 de enero de 1992, el Administrador del F.S.E declaró a Humberto Vidal patrono no asegurado con respecto a los seis empleados lesionados en el período antes mencionado. Adujo el Administrador que la fecha límite para presentar la declaración de nómina correspondiente al año 1989-90 era el 20 de julio de 1990, por lo que Humberto Vidal la había presentado tardíamente el 24 de julio de 1990.
Anteriormente, el día 30 de octubre de 1990, el F.S.E. había enviado a Humberto Vidal una notificación de cobro de primas del seguro obrero correspondientes al año 90-91. En dicha notificación se explicaba que las primas debían ser satisfechas en dos pagos, uno que vencía el 30 de noviembre de 1990 y el otro vencedero el 31 de enero de 1991. En la misiva, el F.S.E. también requirió a Humberto Vidal que remitiera los pagos correspondientes por el correo y para ello acompañó un sobre predirigido. El 30 de. noviembre de 1990 el recurrente depositó en el correo el sobre provisto conteniendo un cheque por la totalidad de la suma facturada correspondiente al primer plazo, el cual fue recibido, registrado y acreditado por el F.S.E. el 4 de diciembre de 1990. Así las cosas, el 18 de diciembre de 1991, el Administrador del F.S.E. declaró a Humberto Vidal patrono no *849 asegurado en 11 de los casos de empleados lesionados durante el período de julio a noviembre de 1990. El Administrador del F.S.E. alegó que el recurrente no tenía su póliza en vigor para estos casos por haber pagado la prima correspondiente el día 4 de diciembre de 1990, cuando el plazo para hacerlo vencía el 30 de noviembre de 1990.
Humberto Vidal apeló estas decisiones oportunamente ante la Comisión Industrial. Luego de una vista y de considerar los planteamientos de las partes, la Comisión Industrial confirmó las decisiones del Administrador del F.S.E. en cuanto declaraban a Humberto Vidal patrono no asegurado en los casos señalados. Ante la solicitud de reconsideración presentada por Humberto Vidal, la Comisión Industrial ratificó su anterior dictamen mediante resolución emitida el 10 de marzo de 1997. Es de esta determinación que se recurre ante nos.
II
En el caso de autos la Comisión Industrial confirmó la determinación del Administrador del F.S.E. declarando que Humberto Vidal debía considerarse un patrono no asegurado en cuanto a los accidentes reclamados. La Comisión fundamentó su decisión en que la Ley Núm. 45, supra, según enmendada, claramente dispone que el seguro patronal rige solamente después de que se recibe en el F.S.E. la declaración de nómina dentro del término allí establecido y, posteriormente, los correspondientes pagos dentro de los términos fijados por el Administrador. Adujo que, como se resolvió en Atlantic Pipe Corp. v. Fondo del Seguro del Estado, 132 D.P.R. _ (1993), 93 J.T.S. 40, pág. 10525, el momento importante para propósitos de la ley es el del recibo de la correspondencia y no el del depósito en el correo, por lo que tanto la declaración de nómina como el pago correspondiente al primer plazo fueron tardíos. La Comisión concluyó que, al no haberse recibido dichos documentos dentro de los términos correspondientes, el seguro patronal no cobijaba al patrono en cuanto a los accidentes para los que se reclama cubierta. Entendemos correcta su apreciación.
Como bien identificó la Comisión Industrial, el caso de autos presenta dos controversias principales. Primero, si cometió error el Administrador del F.S.E. al declarar a Humberto Vidal patrono no asegurado en cuanto a los accidentes ocurridos entre el 1 de julio de 1989 y la fecha en que se recibió la declaración de nómina, el 24 de julio de 1990. Segundo, si erró el administrador al declarar a Humberto Vidal patrono no asegurado en once accidentes ocurridos durante el período de julio a noviembre de 1990.
En cuanto a la primera controversia, el artículo 27 de la Ley Núm. 45, supra, dispone:

"Será deber de todo patrono el presentar al Administrador, no más tarde del día 20 de julio de cada año, un estado expresando el número de trabajadores empleados por dicho patrono, la clase de ocupación o industria de dichos trabajadores y la cantidad total de jornales pagados a tales trabajadores o industrias durante el año económico anterior; Disponiéndose, que a solicitud del patrono y por causa justificada, el Administrador podrá extender dicho término por un período no mayor de 15 días. [...]

Cualquier patrono que haya estado cubierto por el Fondo del Estado a la terminación del año económico anterior, y que estuviere cubierto a partir del día primero de julio del año corriente estará también cubierto dentro del término del primero al veinte de julio que se concede por este Capítulo para archivar la nómina o estado; Disponiéndose que todo patrono que no hubiere presentado el estado a que se refiere esta sección dentro del término que aquí se fija, será considerado como un patrono no asegurado." (Enfasis suplido.) 11 L.P.R.A. sec. 28.
Este artículo claramente establece que no puede considerarse asegurado un patrono hasta que el F.S.E. reciba la declaración de nómina dentro de los términos fijados. Atlantic Pipe Corp. v. Fondo del Seguro del Estado, supra, a la pág. 10527; Sucrs, de J. González v. Comisión Industrial, 61 D.P.R. 306, 309 (1943).
De los hechos anteriormente expuestos se desprende que aunque Humberto Vidal depositó en el correo su declaración de de julio de 1990, el F.S.E. la recibió el 24 de julio de 1990, pasado el término fijado en la ley para presentarlo. También se desprende que el patrono no había solicitado prórroga *850 alguna. Al aplicar las disposiciones de ley a los hechos relatados, es necesario concluir que no erró el administrador al declarar a Humberto Vidal patrono no asegurado en cuanto al período comprendido del primero al 20 de julio, ya que siendo tardía la presentación de la declaración de nómina, debe considerarse al patrono como no asegurado. De lo anterior se deduce que, como bien concluyó la Comisión Industrial, los accidentes ocurridos dentro del período mencionado deben catalogarse como no cubiertos por dicho seguro gubernamental.
El artículo 27 de la Ley Núm. 45, supra, aplicable a la segunda controversia presentada por el caso ante nuestra consideración, dispone lo siguiente:
"El seguro de cada patrono por el Estado comenzará a regir inmediatamente después de que haya sido archivada en las oficinas del Administrador del Fondo del Seguro del Estado su nómina o estado acompañado de importe de la cuota que corresponda al tanto por ciento de los jornales declarados en dicho estado, de acuerdo a los tipos fijados por el Administrador; Disponiéndose, que cualquier accidente que ocurra antes de verificarse el pago será considerado como un caso de patrono no asegurado a menos que el patrono verifique el pago dentro del término fijado por el Administrador del Fondo del Seguro del Estado, en los cuales casos el seguro empezará a regir desde la fecha que el patrono archivo la nomina o estado, en la oficina del Administrador." (Enfasis suplido.) 11 L.P.R.A. see. 28.
En Atlantic Pipe Corp. v. Fondo del Seguro del Estado, supra, nuestro Tribunal Supremo se enfrentó a un caso sumamente parecido al de autos. Allí se resolvió que es claro el texto de la ley al especificar que si el pago es recibido por el F.S.E. después de vencido el plazo concedido por el Administrador entonces el patrono deberá ser considerado no asegurado en relación con accidentes acaecidos antes de recibido dicho pago. El Tribunal hizo énfasis en que debe atenderse al momento del recibo en el F.S.E. más no al momento del envío. El 30 de noviembre de 1990, último día en que debía recibirse, Humberto Vidal depósito en el correo el pago requerido por el Administrador. Los accidentes por los cuales se reclama cubierta ocurrieron en el período de julio a noviembre de 1990. Al considerar los hechos y las circunstancias del caso ante nos, debemos concluir que como el pago de las cuotas es requisito indispensable para que sea efectiva cualquier póliza de seguro del F.S.E., la póliza en el caso de autos comenzó a regir el 30 de noviembre de 1990, cuando se hizo el pago del primer plazo de dicho seguro; que habiendo ocurrido los accidentes en el período en que aún no se había verificado dicho pago y no habiéndose verificado el mismo dentro del término fijado por el Administrador, el cual expiró el 30 de noviembre de 1990, dichos accidentes deben considerarse como unos de patrono no asegurado. No opera, ante estas circunstancias, el efecto retroactivo de la cubierta pues el pago se recibió después de la fecha límite para el mismo. Am. Railroad Co. v. Comisión Industrial, 61 D.P.R. 314, 320 (1943).
El recurrente intenta distinguir este caso de otros resueltos sobre el tema y, sobre todo, del de Atlantic Pipe Corp. v. Fondo del Seguro del Estado, supra. Arguye que en Atlantic el tribunal no consideró la existencia de un alegado "reglamento" que establece que la fecha determinante en lo que respecta a los pagos de primas del seguro, es la fecha del matasello del sobre. No le asiste la razón. El recurrente se refiere a la sección II-B-13 del folleto titulado Procedimiento para la Formalización de Pólizas de Seguro, la cual indica que la Unidad de Formalización de Pólizas del F.S.E. deberá asignarle, como fecha de formalización, al documento que se recibe por correo la fecha del matasellos del correo. Una somera lectura del folleto en cuestión basta para concluir que no se trata de un reglamento, sino de reglas internas o instrucciones a los empleados de la agencia para guiar los procedimientos, las cuales no generan derechos al público en general. La sección 2101 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.) establece que no se consideran reglamentos las normas internas de la agencia, por lo que no les es de aplicación dicha ley. 3 L.P.R.A. sec. 2101. Por ello no puede el recurrente basarse en estas normas para reclamar derechos. Tampoco puede alegar que se violó el procedimiento prescrito por la L.P.A.U., supra, para enmendar reglamentos. Mucho menos hay base para alegar que se violó el debido proceso de ley cuando es inexistente el "reglamento" en el cual basan sus derechos.
Humberto Vidal argumenta que la Consulta Número C-90-25 del 6 de julio de 1990 reconoce que la práctica prevaleciente en el F.S.E. para la fecha de los hechos era considerar la fecha del matasellos como la fecha de recibo de la correspondencia. Alega que, establecida esa costumbre, confió en *851 ella para actuar como lo hizo. En la referida consulta se recomienda que los manuales de procedimiento intemo se conformen al lenguaje de la Ley Núm. 45, supra, e incorporen la fecha límite dispuesta por ley como la fecha de formalización de la póliza. Allí también se expresa que de acuerdo a la intención legislativa y al estado de derecho vigente no puede sostenerse el que la fecha del matasello se considere como la fecha en que se recibió la declaración de nómina. Entendemos que, a pesar de que el texto de la consulta podría interpretarse en el sentido de que existía la práctica en el F.S.E. de considerar la fecha del matasello como la fecha de recibo, no consideramos correcta esta interpretación. Al leer la sección II-B-13 del mencionado folleto, en conjunto con las que le preceden, notamos que la etapa de "formalización" es posterior a la de recibo de correspondencia. Por lo tanto, la fecha del recibo no se afecta por el hecho de que, para propósitos de administración interna, se utilice la fecha del matasellos para llevar algún récord. Además, la letra de la Ley Núm. 45, supra, es clara, al igual que las instrucciones remitidas a los patronos a los efectos de que la correspondencia en cuestión debía ser recibida dentro del término dispuesto.
Plantea el recurrente que la violación al procedimiento de la L.P.A.U. estriba en que el Administrador del F.S.E. acogió la recomendación hecha en la consulta mencionada. Enmendó los manuales de procedimientos internos antes descritos de modo que apareciera en ellos que la fecha de formalización del seguro es la fecha del recibo de la correspondencia y no la del matasello, todo esto, sin notificar al público. No toma en cuenta que por los mismos motivos que las normas enmendadas no constituyen un reglamento, sus enmiendas tampoco lo son. Por ello, y por que no genera derechos ni obligaciones al público en general, no era necesario seguir el procedimiento de notificación dispuesto en la L.P.A.U.
Ante esta situación no puede prevalecer el planteamiento de que a Humberto Vidal se le aplicó una reglamentación retroactivamente y sin la debida notificación previa de su vigencia violándose así el procedimiento contenido en la L.P.A.U., supra. Las disposiciones legales aplicadas en este caso por el Administrador del F.S.E., por la Comisión Industrial y por este Tribunal surgen de la Ley Núm. 45, supra, y no de reglamento alguno.
Por otro lado, el recurrente argumenta que por el hecho de que la agencia en cuestión haya tolerado su costumbre de depositar los pagos en el correo en la misma fecha en que debían recibirse, ésta lo indujo y lo "llevó de la mano" en esa práctica, por lo que la agencia se encuentra ahora impedida de ir contra sus propios actos. Ante este planteamiento, es menester recordar que la doctrina de "los actos propios", al igual que otras doctrinas en equidad, no es oponible contra el Estado cuando se produciría un resultado contrario a la política pública. Del Rey v. Junta, 107 D.P.R. 348, 355-356 (1978); Infante v. Tribunal Examinador, 84 D.P.R. 309, pág. 316 (1961). Tratándose este caso de condonar o no una práctica de dejadez y conveniencia del patrono que puede afectar el funcionamiento de las agencias de gobierno al tener que procesar rápidamente las declaraciones y pagos tardíos, práctica que fácilmente puede ser corregida por el patrono, debemos concluir que no debe aprovecharse Humberto Vidal de la tolerancia del F.S.E. A la misma conclusión debe llegarse en cuanto al hecho de que el F.S.E. le haya enviado a Humberto Vidal una tarjeta de certificación de "patrono asegurado ".
Finalmente, el recurrente aduce que las instrucciones del formulario de declaración de nómina y el hecho de que existiera un sobre predirigido al F.S.E. lo indujeron a creer que los documentos podían ser enviados en la fecha límite indicada por el Administrador del F.S.E. Este argumento carece de todo mérito. Como mencionan los recurrentes, las instrucciones del formulario leían así: "Esta declaración deberá rendirse en o antes del 20 de julio de 1990". El encasillado número 16 del formulario indicaba lo siguiente: "[Ijuego de completar los datos requeridos retenga la copia para su archivo y envíe por correo el original utilizando el sobre aquí provisto." Apéndice al recurso de revisión, págs. 15 y 18. El diccionario nos informa que la palabra "rendir", en el contexto aquí usado, significa entregar, dar, someter a alguien una cosa que le está destinada. Además, no podemos olvidar que la Ley Núm. 45, supra, claramente indica que el momento clave es aquél en que se recibe la declaración y no el del envío. El que el F.S.E. haya enviado un sobre predirigido a los patronos, no constituye indulto ni remisión al deber de presentar dicha declaración dentro del término prescrito, por lo que no debe servir como excusa para no cumplir con las claras instrucciones y disposiciones legales.
III
Debemos concluir que Humberto Vidal es un patrono no asegurado en relación a los accidentes en *852 cuestión dado que no presentó su declaración de nómina ni realizó el pago correspondiente al primer semestre dentro de los plazos establecidos por la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45, supra, según enmendada, 11 L.P.R.A. sec. 1, et. seq.

TV

Por los fundamentos antes expuestos, se deniega la expedición del auto solicitado.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 98 DTA 40
1. Estas decisiones fueron notificadas y recibidas por Humberto Vidal el 18 de febrero de 1992.
2. Es claro que tampoco es de aplicación el beneficio de tres días adicionales al utilizar el correo. Atlantic Pipe Corp. v. Fondo del Seguro del Estado, supra.
3. Anejo 1 del apéndice a la réplica del recurrente.
4. En este punto diferimos de lo expresado por la Comisión Industrial, pero ello no afecta la corrección de la resolución recurrida.
5. Anejo 1 del apéndice al recurso de revisión.